UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| JAMES D. BARRICK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 3:23-CV-662-HAB |
| | ) |
| MARTIN J. O'MALLEY, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

This matter comes before the Court on Plaintiff James D. Barrick's ("Barrick") appeal of the Social Security Administration's Decision dated February 28, 2023 (the "Decision") which found that Barrick was not disabled and not entitled to disability benefits. The parties have briefed the appeal. After considering the briefing and the administrative record, the Court finds, for the following reasons, that the Decision must be remanded.

**ANALYSIS**

*Standard of Review*

A claimant who is found to be "not disabled" may challenge the Commissioner's final decision in federal court. This Court must affirm the ALJ's decision if it is supported by substantial evidence and free from legal error. 42 U.S.C. § 405(g); *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002). Substantial evidence is "more than a mere scintilla of proof." *Kepple v. Massanari*, 268 F.3d 513, 516 (7th Cir. 2001). It means "evidence a reasonable person would accept as adequate to support the decision." *Murphy v. Astrue*, 496 F.3d 630, 633 (7th Cir. 2007); *see also Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995) (substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.") (citation and quotations

omitted). In determining whether there is substantial evidence, the Court reviews the entire record. *Kepple*, 268 F.3d at 516. However, review is deferential. *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). A reviewing court will not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003) (quoting *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000)). Nonetheless, if, after a "critical review of the evidence," the ALJ's decision "lacks evidentiary support or an adequate discussion of the issues," this Court will not affirm it. *Lopez*, 336 F.3d at 539 (citations omitted).

While the ALJ need not discuss every piece of evidence in the record, he "must build an accurate and logical bridge from the evidence to [the] conclusion." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). Further, the ALJ "may not select and discuss only that evidence that favors his ultimate conclusion," *Diaz*, 55 F.3d at 308, but "must confront the evidence that does not support his conclusion and explain why it was rejected," *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004). Ultimately, the ALJ must "sufficiently articulate his assessment of the evidence to assure" the court that he "considered the important evidence" and to enable the court "to trace the path of the ALJ's reasoning." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993) (quoting *Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985) (internal quotation marks omitted)).

***Procedural Background***

Barrick filed for disability benefits on September 28, 2021 alleging he became disabled on December 15, 2020. His claim was denied initially and on reconsideration. On January 11, 2023, a hearing was held before an ALJ. On February 28, 2023, the ALJ issued a Decision finding Barrick not disabled. This appeal followed.

***The ALJ's Decision***

A person suffering from a disability that renders him unable to work may apply to the Social Security Administration for disability benefits. *See* 42 U.S.C. § 423(d)(1)(A) (defining disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months"). To be found disabled, a claimant must demonstrate that his physical or mental limitations prevent him from doing not only his previous work, but also any other kind of gainful employment that exists in the national economy, considering his age, education, and work experience. § 423(d)(2)(A). If a claimant's application is denied initially and on reconsideration, he may request a hearing before an ALJ. *See* 42 U.S.C. § 405(b)(1).

An ALJ conducts a five-step inquiry in deciding whether to grant or deny benefits: (1) whether the claimant is currently employed, (2) whether the claimant has a severe impairment, (3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling, (4) if the claimant does not have a conclusively disabling impairment, whether he has the residual functional capacity to perform his past relevant work, and (5) whether the claimant is capable of performing any work in the national economy. *See* 20 C.F.R. § 404.1520(a*); Zurawski v. Halter*, 245 F.3d 881, 885 (7th Cir. 2001). If step four is answered in the affirmative, the inquiry stops and the claimant is found to be not disabled. If step four is answered in the negative, the ALJ proceeds to step five.

Here, at step one, the ALJ found that Barrick did not engage in substantial gainful activity since December 15, 2020, the alleged onset date.  At step two, the ALJ determined that Barrick has the following severe impairments: obesity, major depressive disorder, bipolar disorder, anxiety, and

3

an unspecified trauma disorder. (R. 13).

At step three, the ALJ found that Barrick did not have "an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926)". (R. 18). At step four, the ALJ found that Barrick had the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except: the claimant can occasionally climb stairs or ramps, stoop, kneel, crouch, or crawl, but can never climb ladders, ropes or scaffolds, nor balance, as that term is used vocationally. The claimant must avoid all exposure to dangerous moving machinery and unprotected heights. With work that can be learned in 30 days, or less, with simple routine tasks, simple work related decisions, and routine work-place changes. The claimant is able to remain on task, persist, and maintain pace in two-hour increments, with no production rate pace work such as on an assembly-line. Occasional interaction with coworkers and supervisors, with no tandem tasks, and with no interaction with the general public.

(R. 25).

Also at step four, the ALJ found that Barrick is unable to perform any past relevant work. (R. 26). However, the ALJ further found that considering Barrick's age, education, work experience, and residual functional capacity, there are jobs in significant numbers in the national economy that Barrick can perform. (R. 27). Thus, Barrick was found to be "not disabled" as defined in the Social Security Act. (R. 28).

***Pertinent Facts***

Barrick was 31 years old on his alleged onset date. (R. 27). He is morbidly obese, with a BMI of 50. He has an extensive history of mental illness, including at least one hospitalization for suicidal ideation. (R. 410). Depression seems to be his biggest problem, but he also suffers from

apathy and is prone to angry outbursts.  He is generally very non-compliant with treatment, and his mental health providers describe his behavior as "self-sabotaging". (R. 495).  He has stated that he feels the medicines don't help but make him feel worse, and that his therapists have given up on him. (R. 57-58).

Barrick has some past relevant work as a sandwich maker, hand packager, tractor-trailer truck driver, and industrial truck operator. (R. 26-27).  He testified that he has been fired from jobs due to his angry outbursts. (R. 491)

*Barrick's Anger Issues*

Barrick faults the ALJ for not including limitations related to his anger issues in the RFC. Barrick claims that he is unable to hold down a job due to his inability to adhere to a schedule and to control his anger. Barrick relies heavily on the opinions and treatment notes of Peter Shenk Koontz, NP.  The record shows that in a visit on December 4, 2020, Barrick stated that his depression was worse, and he was having frequent angry outbursts.  (R. 459). NP Koontz noted that "depressive cognitions limit [Barrick's] ability to apply for and attain employment." (R. 462).  On January 22, 2021, Barrick informed NP Koontz that he had been having angry outbursts at work, but only a few angry outbursts at home. (R. 475). However, he reported becoming frustrated with cooking and throwing what he was cooking across the kitchen. (R. 507).  On August 6, Barrick reported to NP Koontz that his anger had been worse recently. (R. 517).  In a visit with Jeffrey Kauffman, NP, on November 10, 2021, Barrick stated that he was fearful that he would harm his fiancé. (R. 533). He reported becoming angry at home and throwing a video game controller, and that when he was in public he had thoughts of harming others. (R. 540-41). NP Kauffman noted that Barrick "demonstrates inability to adhere to a work routine and maintain employment." (R. 542). Both NP

5

Koontz and NP Kauffman documented many instances of Barrick refusing to take medications.  Thus, On February 1, 2022, Barrick was discharged from individual therapy with a temporary continuance of medication management services because Barrick had "developed [a] pattern of passive non-engagement" and "agreed that progress was not being made." (R. 529). He was referred to other organizations for anger management resources and medication management providers.  (R. 529).

On March 8, 2022, psychologist Rachael Garcia conducted a consultative mental status examination.  (R. 550).  Barrick indicated he had difficulty functioning in a work setting due to his anxiety and difficulty working with others. (R. 551). Dr. Garcia diagnosed bipolar I disorder, generalized anxiety disorder, and panic disorder, based on Barrick's reported symptoms. (R. 553).

In his testimony before the ALJ, Barrick detailed his history of anger issues stating that he was suspended several times in school for fighting, was in several fights as an adult, got into altercations in his trucking job and threw snow and rocks at a truck, and that his fiancé has to step in sometimes to hold him back from fighting with others. (R. 59-67).  His solution to his problems is to stay home as much a possible and stay away from other people, noting that his "biggest fear is ending up in jail because of my anger."  (R. 66).  The vocational expert testified that "[a]ny type of violence or property damage typically would result in termination." (R. 77).

*The ALJ's Evaluation of Barrick's Mental Impairments*

As discussed earlier, the ALJ found that Barrick had the severe impairments of obesity, major depressive disorder, bipolar disorder, anxiety, and an unspecified trauma disorder. (R. 13).  The RFC limits Barrick to a reduced range of light work, with occasional interaction with coworkers and supervisors, no tandem tasks, and no interaction with the general public. (R. 25). In a rambling sort of way the ALJ discussed Barrick's mental health treatment, noting in several places that Barrick at

least reportedly had anger issues. (R. 15, 19, 20).  The ALJ also noted that "the evidence supports [Barrick's] conscious decisions not to adhere to use of medication and therapy to address issues he alleges to be totally disabling and sufficient to preclude essentially all work and most daily activities." (R. 17).  The ALJ found it "inconsistent" for Barrick to allege total disability due to mental issues, yet refuse treatment for those mental issues. (R. 18).  However, the ALJ acknowledged that Barrick found going to group therapy was counter-productive, as he did not want to be around people.  Likewise, the ALJ noted that Barrick's therapist suggested he take walks around the neighborhood, but he had too much anxiety to go outside by himself.  (R. 18).  Many medications were tried, including lithium (R. 503), an asenapine patch (R. 540), seroquel, fluoxetine (R. 542), Depakote, Lexapro, and gabapentin (R. 560). However, Barrick either never started or quickly stopped his medications, citing various reasons such as skin reactions, the medicines didn't help, or the medicines made him feel worse.

      The ALJ concluded that "in context of the overall evidence as a whole such allegations of total disability by the claimant are not now reasonably nor consistently nor persuasively supportive of total disability nor of greater limitation in functioning than that acknowledged and assigned herein." (R. 19).  Essentially, the ALJ did not find Barrick's allegations that he couldn't function well enough to work to be credible, because the record shows that he couldn't function well enough to follow through with a treatment plan.  The Seventh Circuit has held that if an ALJ considers non-compliance with treatment as a factor in deciding whether a claimant is disabled, then the ALJ must also determine whether the non-compliance was justified. *Ghiselli v. Colvin*, 837 F.3d 771, 778-70 (7th Cir. 2016).  The ALJ in the present case did not even discuss the possibility that Barrick's non-compliance might have been the result of his mental illnesses, especially his severe depression. *Kangail v. Barnhart*, 454 G.3d 627, 629-31 (7th Cir. 2006)(remanding where ALJ did not consider

possibility that "mental illness in general . . . may prevent the sufferer from taking her prescribed medicines or otherwise submitting to treatment").  Rather, the ALJ jumps to the apparent conclusion that since Barrick did not comply with treatment, he must be faking symptoms in order to obtain disability benefits. (R. 18). This actually flies in the face of logic, because if someone was wanting to convince the Administration that he had serious mental illnesses, when he did not, he would likely comply with treatment and simply say it didn't help.   Barrick, however, reacted to treatment the way he seems to have reacted to everything else in his life: he either fought it or he ignored it.   As the ALJ failed to consider the possibility that Barrick's behavior and inability to comply with his treatment plans might have been due to his mental illnesses, remand is required.

The related issue in this case is that the ALJ did not give due consideration to Barrick's anger issues.  While the ALJ recited some of the evidence which tends to show that Barrick has continuing problems controlling his frustration and anger, the ALJ did not discuss how this impacts his ability to work.  Rather, the ALJ discredited Barrick's allegations of anger issues by noting that he was able to hold down a part time job for a few months, before getting fired for a verbal altercation with his boss.  The ALJ also relied on the fact that Barrick drove his fiancé to work and was cooperative with his medical providers during examinations.  However, the Seventh Circuit has cautioned that an ALJ's failure to recognize the difference between sporadic activities of daily living and holding down a full-time job is a reversible error. *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012).  The record demonstrates that Barrick has <u>unpredictable</u> anger.  This, along with Barrick's proven inability to function well enough to even follow through with mental health treatment, should have been more fully explored by the ALJ.  As the Decision now stands, this Court is at a loss to understand the ALJ's reasoning, as the ALJ rejected Barrick's allegations without a cogent explanation, and also failed to discuss the opinions of NP Koontz and NP Kauffman that Barrick

could not function well enough to hold down a job.  The Commissioner contends that the ALJ was not required to consider the opinions because they consist of "[s]tatements on issues reserved to the Commissioner", 20 C.F.R. § 404.1520b(c)(3)(i), *i.e.*, whether Barrick is disabled.  However, neither provider opined that Barrick was disabled.  Rather, their opinions were focused on Barrick's inability to perform certain acts, such as following a schedule and keeping composure at work.  In any event, the ALJ did not state that she was ignoring the opinions because she felt they touched on an issue reserved to the Commissioner.  Rather, the ALJ simply omitted any discussion of these opinions.  This is clear error, and remand is warranted.

## CONCLUSION

For the reasons set forth above, the Defendants' Decision is REVERSED and this case is REMANDED to the Social Security Administration for further proceedings consistent with this Opinion.  The Clerk is directed to enter judgment in favor of Plaintiff and against Defendant Commissioner of Social Security.

SO ORDERED on March 19, 2024.

/s / Holly A. Brady
HOLLY A. BRADY, CHIEF JUDGE
UNITED STATES DISTRICT COURT